## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

CASE NO: 3:09-CR-397

v.

(JUDGE CAPUTO)

WILLIAM MOYER,

Defendant.

## MEMORANDUM

Presently before the Court are various motions by Defendant William Moyer, including a motion to dismiss Count One and Count Two of the Indictment for failure to sufficiently allege a violation of 18 U.S.C. §1519 (Doc. 99), a motion to dismiss Count One and Count Two of the Indictment because §1519 is unconstitutionally vague (Doc. 97), a motion to dismiss Count Three and Count Four of the Indictment for failure to sufficiently allege violations of 18 U.S.C. §§ 1512(c) and 1512(b)(3) (Doc. 101), a motion to compel uncharged misconduct evidence (Doc. 91), a motion for disclosure (Doc. 89), a motion for *Brady* and *Giglio* material (Doc. 94), a motion for early production of *Jencks* material (Doc. 90), a motion to inspect Grand Jury minutes (Doc. 86), a motion to preserve and produce notes, reports, and evidence (Doc. 87), a motion to preserve and produce tapes (Doc. 92), a motion for notice (Doc. 95), and a motion for leave to file additional pretrial motions (Doc. 88.)[1]  For the reasons discussed below, Defendant's motions will be granted in part and denied in part.

---

[1] Defendant also seeks to join in the motions and briefs of Co-Defendants Hayes and Nestor (Doc. 123) and to join in the corresponding reply briefs (Doc. 139.).  Pursuant to *Local Rule 7.8* which forbids the incorporation of one brief into another and which mandates that a brief may address only one motion, these motions are denied.

**BACKGROUND**

On December 10, 2009, the Grand Jury charged Defendant Moyer with one count of conspiracy under 18 U.S.C. §371, one count of falsification of records under 18 U.S.C. §1519, one count of attempt to conceal a physical object under 18 U.S.C. §1512(c), one count of corrupt persuasion under 18 U.S.C. §1512(b)(3), and one count of making false statements under 18 U.S.C. §1001.  The Indictment ("Indict.") alleges the following:

On July 12, 2008 a group of six males, including, Derrick Donchack ("Donchack"), Brandon Piekarsky ("Piekarsky"), Participant # 1, and Participant # 2, assaulted L.R., a Latino Male, while members of the group yelled racial slurs.  Specifically, the group yelled: "Spic," "Fucking Spic," "Go back to Mexico," and "Tell your Mexican friends to get the fuck out of Shenandoah."  On July 14, 2008, as a result of the assault, L.R. died from blunt-force trauma to the head.  (Indict. at 1, Doc. No. 1.)

At the time of the assault, Defendant Hayes was a patrolman for the Shenandoah Police Department, was dating the mother of Piekarsky, and knew the individuals involved in the assault.  Defendant William Moyer, a lieutenant in the Shenandoah Police Department, has a son who, at the time of the assault, was a high school freshman on the same football team as the individuals who assaulted L.R.  Defendant Matthew Nestor, Shenandoah Chief of Police at the time of the assault, was a friend of Piekarsky's mother and had vacationed with her.  (Indict. at 2.)

Defendants Nestor, Moyer, and Hayes conspired in relation to and contemplation of a matter within United States jurisdiction to falsify police reports with the intention of impeding or influencing the investigation and administration of that United States matter. (Indict. at 3.)  As part of the means, manner, and object of the conspiracy, Donchak,

2

Piekarsky, Participant # 1, Participant # 2, and two others, Person # 1 and Person # 2, provided false statements to officials regarding the assault. Furthermore, Defendants Moyer, Hayes, and Nestor intentionally failed to record inculpatory statements by Piekarsky and intentionally wrote false and misleading reports and false statements by those involved in the racially motivated assault. (Indict. at 3 - 4.)

In furtherance of the conspiracy, Defendants Moyer and Hayes detained Piekarsky, Donchak, Participant # 1, and others as they were fleeing the scene of the crime, and then released them despite the fact that Person # 3, a 911 caller, identified them as L.R.'s attackers. (Indict. at 4.) Following the assault, Piekarsky took Defendants Hayes and Moyer to the crime scene and told them about the assault. Afterwards, Piekarsky's mother, T.P., spoke to Defendant Hayes, and, while at Donchack's home told Piekarsky, Donchak, Participant # 1, Participant # 2, and others that Hayes said to "get their stories straight" because there could be a murder investigation. (Indict. at 5.) Prior to leaving Donchak's home, Donchak, Piekarsky, Participant # 1, Participant # 2, and others, created a false story which omitted the racial motivation for the assault. (Indict. at 6.) On July 13, 2008, Defendant Moyer went to Participant # 1's home to tell him to decide on a version of events to tell authorities. Between July 13 and July 16, 2008, Donchak, Participant # 1, Participant # 2, Person # 1, and Person # 2 gave false statements to police about the assault. *Id.*

Weeks following the assault, Defendant Moyer contacted the parents of Participant # 2, telling them to dispose of the sneakers worn on the night of the assault, and following this, Piekarsky and Donchak disposed of the sneakers they wore that night. (Indict. at 7.) On July 29, 2008, Defendant Hayes knowingly created a false report about the investigation of the assault. On or about August 1, 2008, Defendants Moyer and Hayes deliberately

3

mischaracterized witness accounts in official reports to exculpate Piekarsky and falsely implicate Participant # 2, and Defendant Nestor reviewed and approved Hayes' report, which Nestor knew to be false. On or about July 20 and August 1, 2008, Defendant Nestor knowingly created a false report about the assault. (Indict. at 7.) Defendant Moyer created two false reports, one soon after the assault, titled "Lt. William Moyer's Incident Report regarding Case # 125-424," and one on or about August 1, 2008, titled "Investigation of Kids Running from Homicide Scene." (Indict. at 8.)

Shortly before July 24, 2008, Defendant Moyer, knowing that Piekarsky was guilty in the assault, advised the parents of Participant # 2 that the Shenandoah Police Department did not intend to file serious charges, but the District Attorney had taken over the case and Participant # 2 should take full responsibility for the assault. On March 30, 2009, T.P. called the father of Participant # 1, referencing Participant # 1's cooperation with federal authorities. She told the father that Piekarsky would not get indicted if Participant # 1 did not testify against him. (Indict. at 8.) Defendant Moyer corruptly persuaded Participant # 1 to coordinate a story with the other assailants with the intention of hindering the investigation of a federal offense. (Indict. at 11.) Defendant Moyer, in relation to a matter under FBI jurisdiction, lied about Person # 3, a 911 caller, stating that Person # 3 said they saw a man with a gun when Person # 3 actually stated he saw the group of six boys assault L.R. (Indict. at 12.)

**DISCUSSION**

**I.     MOTION TO DISMISS FOR FAILURE TO ALLEGE A VIOLATION OF 18 U.S.C. §1519**

Defendant is charged with one count of obstruction of justice under 18 U.S.C. §1519 and one count of conspiracy to violate §1519 under 18 U.S.C. §371.  Chapter 73 of Title 18 of the United States Code deals with criminal liability for obstruction of justice.  §1519 of that chapter provides:

> [w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. §1519.  Defendant claims that the Indictment must be dismissed because §1519 requires a nexus between the alleged obstructive action and some matter within the jurisdiction of the United States and that the Government has failed to sufficiently allege such a nexus.

**A.     Nexus Requirement**

Defendant claims that §1519 requires a nexus between the alleged act of obstructing justice and a federal investigation.  Defendant relies on two United States Supreme Court decisions which required such a nexus in  §§1503 and 1512(b)(2), both of which are obstruction of justice statutes under Chapter 73.  Defendant claims that because of the similarities between these statutes and §1519, the nexus requirement in those provisions should be read into to §1519.

5

First, in *United States v. Aguilar*, the Court found that 18 U.S.C. §1503 requires a nexus between an obstructive action and the administration of justice which it affects. 515 U.S. 593, 598-600 (1995). Under §1503, anyone who "corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice" is criminally liable. 18 U.S.C. §1503. This "omnibus clause" is a broad, catch-all provision attached at the end of §1503 and is designed to encompass acts not covered by earlier, more specific provisions in §1503. *Aguilar*, 515 U.S. at 598. It was under this general provision that the Aguilar was charged. *Id.*

In finding a nexus requirement in §1503, the Court looked to prior precedent which held that a person was not "sufficiently charged" with obstruction of justice unless that person "had notice that justice was being administered." *Id.* (quoting *Pettibone v. United States*, 148 U.S. 197, 207 (1893)). Viewing this precedent, the Court adopted a nexus requirement which had been imposed upon §1503 by some circuit courts; this requirement mandated that "the [obstructive] act must have a relationship in time, causation, or logic with the judicial proceedings" that the action was alleged to have obstructed. *See Aguilar*, 515 U.S. at 599 (citing *United States v. Wood*, 6 F.3d 692, 696 (10th Cir. 1993); *United States v. Walasek*, 527 F.2d 676, 679 (3d Cir. 1975)). This nexus requirement demands that the obstruction has the "'natural and probable effect' of interfering with the due administration of justice." *Id.* at 599 (quoting *Wood*, 6 F.3d at 695).

The Court read this nexus requirement into §1503 because the broad, catch-all provision could encompass innocent acts; absent a nexus between the act and the official

proceeding, there is no "evil intent to obstruct" or criminal culpability which is normally associated with criminal prosecutions *Id.* at 599 (citing *Pettibone,* 148 U.S. at 207). Therefore, "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding [the nexus], he lacks the requisite intent to obstruct." and is not properly charged under §1503. *Id.* at 599.

Secondly, in *Arthur Anderson LLP v. United States*, the Court held that 18 U.S.C. §1512(b)(2) requires a nexus between threats and an official proceeding which those threats obstructed or could obstruct. 544 U.S. 696, 708 (2005). §1512 provides penalty for anyone who:

> knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to cause any person to: (A) withhold testimony, or withhold a record, document, or other object from an official proceeding or (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding.

18 U.S.C.A. §1512(b)(2). In finding a nexus requirement in §1512(b)(2), the Court focused specifically on the language "knowingly" and "corruptly persuades." *See Arthur Anderson*, 544 U.S. at 703-08. Joining together the terms knowledge, meaning "awareness, understanding, or consciousness," and corrupt, meaning "wrongful, immoral, depraved, or evil," the Court found that in order to be criminally culpable under §1512(b)(2), a person must be conscious of their wrongdoing. *Id.* at 706. The Court found that the parties must have had the specific intent to taint the official proceedings in order to meet this requirement. *See id.* While §1512 does not require a pending or ongoing proceeding in order to bring prosecution, the Court found that such a proceeding must actually have been foreseen or

contemplated in order to foster the evil intent mandated by the "knowingly . . . corruptly persuade" language. *Id.* at 707-08. This requirement, the Court noted, is essentially the nexus mandated by *Aguilar*. *Id.* at 708.

The analysis of whether §1519 requires such a nexus begins with one sound principle: federal courts, in deference to Congress and in order to provide fair warning to the citizenry that its actions would be illegal under federal law, should exercise restraint in construing the reach of federal criminal statutes. *Aguilar*, 515 U.S. at 600 (citing *McBoyle v. United States*, 283 U.S. 25, 27 (1931); *Dowling v. United States*, 473 U.S. 207 (1985)); *Arthur Anderson*, 544 U.S. at 703. This ideal led the Court to require a nexus in §1503 and §1512(b)(2) prosecutions. *See id.* Without the requirement of a nexus, the public may not know that their actions are illegal because they would not be aware of the federal proceeding they were obstructing. *See id.* Restraint is "particularly appropriate . . . where the act underlying the conviction . . . is by itself innocuous." *Arthur Anderson*, 544 U.S. at 703. For instance, in *Arthur Anderson*, the statute at issue, §1512(b)(2), prohibited someone from persuading a person with intent to cause that person to withhold documents from the government. *Id.* at 704. Restraint was appropriate because this law could apply to a family member advising a loved one to invoke their Fifth Amendment rights or to a lawyer counseling a client to withhold documents covered by attorney client privilege. *Id.* Similarly, restraint is appropriate when interpreting §1519. §1519 forbids someone to "knowingly . . . conceal . . . any record . . . with intent to . . . obstruct . . . the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. §1519. This provision, like that at issue in *Arthur Anderson*, would

8

seemingly apply to a lawyer advising a client to withhold privileged documents, a perfectly innocent activity. It would also apply to the family member advising a loved one to invoke their Fifth Amendment right from self incrimination. Because these legitimate actions could be within the reach of §1519, restraint is required in interpreting this provision.

In light of this principle and established precedent, I find that the nexus requirement of *Aguilar* and *Arthur Anderson* should be applied to §1519. §1519 provides criminal liability for anyone who:

> knowingly alters, destroys, mutilates, conceals, or covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States ... or in relation to or contemplation of any such matter or case.

18 U.S.C.A. §1519. First, this statute, when read alongside §§ 1503 and §1512(b)(2), contains similar language to that which led the Court to read a nexus requirement into those statutes. All three of these statutes are found under Section 73 of the criminal code under the heading "Obstruction of Justice" and share a similar spirit. Each statute was enacted with language which broadened previous obstruction laws under Section 73. However with the broadening of the statutes, the Supreme Court, through *Aguilar* and *Arthur Anderson*, reigned in the statute through the nexus requirement. The language of §1519, like the "knowingly . . . corruptly persuades" language in §1512(b)(2), requires that the accused "knowingly" destroy or alter evidence with "intent" to affect a federal investigation or matter within United States jurisdiction. Each statute requires an action of obstruction of justice: obstructing justice by threat of force, altering evidence, or destroying evidence. Each statute also requires some sort of federal proceeding: the due administration of justice, an official

9

proceeding, or any matter within the jurisdiction of any department or agency of the United States. While each statute encompasses different actions and different proceedings, the effect of each statute is the same. The action must be intended to affect the federal proceeding covered in the statute. This is the nexus that is required by *Aguilar* and *Arthur Anderson* and also by §1519.

Secondly, the policy underlying the nexus requirement of §§1503 and 1512(b)(2) requires that the nexus requirement be applied to §1519. The nexus is required to maintain the culpable criminal mentality that is normally expected in criminal prosecutions. The nexus mandate is precisely designed to restrain broad, catch-all provisions like that in §1519 from overreaching. It is intended to ensure that ordinary citizens are put on notice as to whether or not the actions they commit are illegal or illegal. In order for citizens to know whether their actions are illegal under §1519, they must be aware of the link, or nexus, between their actions and the matter which is under United States jurisdiction. Absent this awareness, they cannot be said to have the culpable mind set required in criminal proceedings and under *Arthur Anderson*. *See, e.g.*, *Arthur Anderson*, 544 U.S. at 703 - 04; *Aguilar*, 515 U.S. at 599 - 600. Therefore, policy dictates that the nexus requirement imposed on §§1503 and 1512(b)(2) by *Aguilar* and *Arthur Anderson* also be demanded under §1519.

The Government argues that *Aguilar* and *Arthur Anderson* should not apply to §1519 because Congress intended for the statute to cover a broad range of actions not covered by existing obstruction of justice laws. The argument focuses on a Senate Report pertaining to §1519 which states:

> Other provisions, such as [§1503], have been narrowly interpreted by courts, including the Supreme Court in [Aguilar] to apply only to situations where the obstruction [is] closely tied to a pending judicial

10

> proceeding ... the current laws regarding destruction of evidence are full of ambiguities and technical limitations that should be corrected. This provision is meant to accomplish those ends. Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence <u>so long as they are done with intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to or in contemplation of such a matter or investigation</u> ... It also extends to acts done in contemplation of such federal matters, so that the timing of the act in relation to the beginning of the matter or investigation is also not a bar to prosecution. The intent of the provision is simple; people should not be destroying, altering, or falsifying documents to obstruct any government function.

S. Rep. No. 146, 107th Cong., 2d Sess. 14-15 (2002) (emphasis added). The Government's argument is defeated by this very Senate Report. As the report makes clear, the defendant must have intended to affect the future investigation or contemplate that such a future investigation or proceeding may occur. *Id.* While the Senate did intend §1519 to be expansive and broaden the scope of previous obstruction statutes, the nexus requirement does not frustrate this purpose. Like §1519, §1512(b)(2), interpreted through *Arthur Anderson*, was intended to apply to federal proceedings that had not yet occurred or were not yet pending. 544 U.S. at 707-08. Despite this broad intent, the Court still required the nexus and the foreseeability of the proceeding. *Id*. at 708. Likewise, Congress' own words in §1519 "or in ... contemplation of" indicate that this nexus requirement exists in §1519.

The Government next contends that the *Arthur Anderson* analysis of §1512(b)(2) does not apply to the more broadly worded §1519. The Government claims that *Arthur Anderson* parses language such as "knowing," "corrupt," and "official proceedings," which is less broad than the language used in §1519 and therefore, that this analysis does not apply to the current matter. The language of §1519, while broader than that in §1512(b)(2), does not

negate the *Arthur Anderson analysis.* §1519 uses the language "knowingly," which as in *Arthur Anderson* means "awareness, understanding, or consciousness." 544 U.S. at 706. *Arthur Anderson* focused on the word "corrupt," to describe the evil intent contemplated by §1512(b)(2). While the Government is correct that "corruptly" is not found in §1519, this same evil intent is. §1519 applies to the intent to "impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. §1519. This language imposes upon the §1519 defendant the same sinister mentality which "corruptly" requires of a §1512(b)(2) defendant. This evil, coupled with "knowingly" mens rea, invites the analysis that the Court applied in *Arthur Anderson.* Furthermore, the fact that §1519 contains this all-encompassing, broad language, creates an even greater need for a nexus requirement. Without the requirement, the danger of both the lack of notice and criminalization of innocent actions which was contemplated by *Aguilar* and *Arthur Anderson* is present in §1519. Therefore, §1519 requires a nexus between the alleged obstruction and the matter within United States jurisdiction which the action is contemplated to obstruct.

**B.    Sufficiency of the Allegations**

Defendant contends that the Government has failed to allege a violation of §1519 for two distinct reasons. First, Defendant claims that the nexus requirement of §1519 is an element of the offense which must be alleged in the indictment and that because the Government has failed to allege such a nexus, the indictment must be dismissed. Secondly, Defendant argues that the Government has failed to allege that Defendant acted in contemplation of any matter within the jurisdiction of the United States under §1519 and that,

therefore, the indictment must be dismissed.

### 1. Whether the §1519 Nexus Requirement is an Element of the Offense Which Must Be Alleged in the Indictment

The nexus requirement articulated in *Aguilar* and *Arthur Anderson* mandates a "relationship in time, causation, or logic" between the alleged act of obstruction and the federal investigation or matter within United States jurisdiction which the act is contemplated to obstruct. *Aguilar*, 515 U.S. at 599 (citing *Wood*, 6 F.3d at 696; *Walasek*, 527 F.2d at 679). Furthermore, the act must have "'natural and probable effect' of interfering with" the investigation or matter within United States jurisdiction. *Id.* (citing *Wood*, 6.F.3d at 965).

Defendant claims that the Government has not sufficiently alleged the nexus between Defendant's conduct and a federal investigation or proceeding. Defendant claims that the Government has not alleged that Defendant either intended to affect a matter within United States jurisdiction or contemplated a future matter within United States jurisdiction when committing the obstructive act. Defendant claims that there are no allegations of knowledge of a racial motivation in the slaying of L.R. which would allow Defendant to foresee a federal prosecution or investigation. Defendant misreads the indictment and confuses the §1519 nexus requirement as an element of the offense that must be alleged in the indictment.

While *Aguilar* and *Arthur Anderson* require proof of a nexus in §1503 and §1512(b)(2) prosecutions, they do not mandate a nexus allegation in a criminal indictment; it is a factual determination appropriately left to the jury. *United States v. Triumph Capital Group, Inc.*, 260 F.Supp.2d 470, 475 (D. Conn. 2003) ("the nexus requirement must only be proved at trial"); *United States v. Black*, 469 F.Supp.2d 513, 543 (N.D. Ill. 2006) (finding that the nexus requirement of §1512(b)(2) need not be alleged in the indictment but is a factual question

13

for the jury); *United States v. Ring*, 628 F.Supp.2d 195, 223-24 (D. D.C. 2009) (holding that the nexus requirement of §1512(c)(2), like that of §§1503 and 1512(b)(2), is a jury question and need not be alleged in the indictment); *United States v. Potts*, Crim. No. 07-85, 2007 WL 2219392, at 3 - 4 (D. Minn. 2007); *see also United States v. Gabriel*, 920 F.Supp. 498, 501 (S.D. N.Y. 1996) (noting that *Aguilar* does not require that a nexus be pleaded in the indictment). Because the nexus requirement of §1519 is derived from that instituted in *Aguilar* and *Arthur Anderson*, §1519 likewise does not require the nexus to be alleged at the indictment stage. *United States v. Russell*, 639 F.Supp.2d 226, 235 (D. Conn. 2007).

### 2. Whether the Government has Sufficiently Alleged a Violation of §1519

Rule 7(c)(1) requires an indictment to contain "a plain, concise, and written statement of the essential facts constituting the offense charged" and a statement of which statutes the defendant is alleged to have violated. Fed. R. Crim. P. 7(c)(1). Under Federal Rule of Criminal Procedure 12(b)(3)(B), motions claiming a defect in the indictment must be raised prior to trial. In ruling on a Rule 12(b)(3)(B) motion to dismiss, the court's role is not to determine the sufficiency of the evidence, but to determine whether the allegations in the indictment are sufficient to charge the named offense. *See United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (citing *United States v. Sampson,* 371 U.S. 75, 78-79 (1962)). The trial court should consider only those objections "that are capable of determination without the trial of the general issue." *United States v. Carlos Alberto Diaz-Gomez*, No. CRIM. 88-484-1, 2000 WL 1868394, at *3 (E.D. Pa. 2000) (quoting *United States v. Donsky*, 825 F.2d 746, 751 (3d Cir. 1987)). Because a motion to dismiss should not be decided based on the weight of the evidence, the allegations in the indictment are

14

assumed to be true.  *See Diaz-Gomez*, 2000 WL 1868394, at * 3.

To determine the sufficiency of an indictment, courts utilize a two part test: (1) "whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *United States v. Oliver*, No. 01-3223, 2002 WL 31474532, at *1 (3d Cir. 2002) (quoting *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000)). "No greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution."  *United States v. Bryant*, 556 F.Supp.2d 378, 383 - 84 (D. N.J. 2008) (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)).  In reviewing an indictment, a court should use "common sense" to determine "whether [a defendant's] conduct, as charged 'reflect[s] a proper interpretation of criminal activity under the relevant criminal statute.'" *Id.* at 384 (quoting *Hodge*, 211 F.3d at 76; *United States v. Delle Donna*, 552 F.Supp.2d 475, 483 (D. N.J. 2008)).

Defendant's indictment passes this two-part test.  It sets out the elements of §1519, that Defendant: (1) knowingly (2) falsified documents (3) with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of an agency of the United States which was contemplated by Defendant.  Moreover, the indictment is more than sufficient to place Defendant on notice of the charges which he must meet.  It specifically sets out which police reports were falsified, the date on or about which they were falsified, and who prepared the falsified reports.  It is also not open ended: the

indictment alleges that the obstruction occurred between July 12, 2008 and May 30, 2009. This definite period helps to satisfy part two of the test because it highlights the specific conduct at issue. Finally, there is also no discretionary power given to those who apply the law.

Furthermore, the indictment sufficiently alleges that the falsification of these reports could have impeded a federal investigation. The indictment alleges that a group, including Piekarsky and Donchak, assaulted L.R. and that there was a racial motivation for the assault. It alleges that Defendants Moyer, Hayes, and Nestor participated in a conspiracy to impede a federal investigation. It alleges that Piekarsky told Defendants Hayes and Moyer about the assault and that Defendant Hayes, in furtherance of the conspiracy, told the assailants to get their stories straight. It alleges that as a result of this, Piekarsky, Donchak, and others omitted details about the racial motivation for the crime and that these details were in turn omitted from the police report. It alleges that Defendant Nestor knew that these reports were false and approved and filed them despite this knowledge. These allegations are more than sufficient to allege a violation of §1519 and to put Defendant on notice that these are the actions for which he is being charged. While not required to allege a nexus in the indictment, the Government has actually alleged one. It has alleged a "relationship in time, causation, or logic" between the falsification of documents and a potential federal proceeding which the falsification had the "natural and probable effect" of obstructing. Here, the relationship is logical. There is a logical relationship between the falsification of police reports to cover up a racial motivation for a murder and a future federal hate crimes prosecution. The falsification of the report has the probable effect of impeding such a prosecution.

This situation is analogous to one presented in *United States v. Hunt*, where Hunt, a

16

police officer, falsified a police report in regards to excessive force used against a suspect. 526 F.3d 739, 741-42 (11th Cir. 2008). Hunt was prosecuted under §1519 evidence was presented which indicated that Hunt knew that claims of excessive force would be investigated by the FBI. *Id*. at 745. This evidence was used to establish that Hunt had intended to obstruct a federal investigation. *Id*. While *Hunt* was a post conviction case, and this case deals with the sufficiency of the indictment, the rational underlying *Hunt* applies. The indictment in this case sufficiently alleges that Defendant knew of and covered up the racial motivation for the assault. This provides a nexus to a federal hate crime investigation. Like in *Hunt*, the Government can prove at trial that this investigation was foreseeable to and contemplated by Defendant at the time of the cover up because he knew that racially motivated crimes could be prosecuted by the federal government. It is unnecessary for the government to allege specific facts to show intent at this point in the proceedings; that is an issue which is appropriately left for trial. *Russell*, 639 F.Supp.2d at 237 (citing *United States v. Alfonso*, 143 F.3d 772, 777 (2d. Cir. 1998)). Therefore, the Government has sufficiently alleged a violation of §1519.

## II.     MOTION TO DISMISS BECAUSE 18 U.S.C. §1519 IS UNCONSTITUTIONALLY VAGUE

Defendant claims that §1519 is unconstitutionally vague because of its use of the phrase "in contemplation of . . . any investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." In essence, Defendant's complaint goes to the breadth of the statute. A statute is unconstitutionally vague if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its

17

application." *United States v. Fumo*, 628 F.Supp.2d 573, 596 (E.D. Pa. 2007) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). "Laws must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly' and must 'provide explicit standards for those who apply them.'" *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 - 09 (1972)). §1519 complies with this standard.

Specifically, §1519 is not vague as applied to the facts of this case. §1519 forbids (1) knowing (2) mak[ing] a false entry in any record (3) in contemplation of the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States. This forbidden conduct is precisely that with which Defendant is charged. The Government alleges that Defendant knowingly falsified the racial motivation for an assault in a police report in contemplation of a federal investigation. A person of ordinary intelligence would understand that as a police officer, it would be illegal under §1519 to falsify, in a police report, the racial motivation for an attack in order to impede a future federal hate crimes investigation.

Defendant claims that this connection is too attenuated, that it was simply not foreseeable for the Defendant to anticipate a hate crimes investigation which arose nearly a year and a half after the assault and after a state prosecution for the assault had already commenced and finished. The question of whether this link is too attenuated or whether the police officers actually contemplated a future federal investigation is a question of fact for the jury.

Furthermore, as several courts have pointed out, §1519 contains a scienter requirement which mitigates any vagueness that remains in the statute. *Fumo*, 628

18

F.Supp.2d at 598; *Russell*, 639 F.Supp.2d at 240 (noting that §1519's use of the mens rea "knowingly" creates a necessary consciousness of wrongdoing that "eliminates any statutory vagueness concerns). §1519 was sufficient to put these officers on notice that the actions alleged in the indictment were illegal, and therefore, it is not unconstitutionally vague.

## III.    MOTION TO DISMISS COUNT THREE AND COUNT FOUR

Defendant claims that Counts Three and Four of the indictment must be dismissed because they do not sufficiently allege the elements of 18 U.S.C. §§1512(c) and 1512(b)(3). Defendant's complaints are similar to those raised in his opposition to his indictment under §1519. He argues that the indictment does not sufficiently allege a nexus between his obstructive conduct and a future proceeding or the intent to obstruct a future federal proceeding.

Defendant is correct that §1512(c) and §1512(b)(3) contains a nexus element. *See United States v. Phillips*, 583 F.3d 1261, 1264 (10th Cir. 2009) (citations omitted) (noting that the Second and Sixth Circuit Courts of Appeals have also found that §1512(c) contains a nexus requirement and that no circuit court has rejected that finding); *United States v. Fowler*, 603 F.3d 883, 886-87 (11th Cir. 2010) (citation omitted) (noting that §1512(b)(3) contains a nexus requirement)). However, Defendant's assertion that these provisions require the nexus to be alleged in the indictment is incorrect. As discussed above, a nexus need not be alleged in an indictment for obstruction of justice; it is an element which must only be proven to the jury beyond a reasonable doubt. *United States v. Ring*, 628 F.Supp.2d 195, 223-24 (D. D.C. 2009).

18 U.S.C. §1512(c) states that:

> Whoever corruptly (1) alters, destroys, mutilates, or conceals, a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so

is criminally liable. 18 U.S.C. §1512(c). Likewise, §1512(b)(3) provides penalty for:

> Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings

18 U.S.C. §1512(b)(3). Defendant contends that the indictment fails because it does not allege what official proceeding or judicial proceeding was obstructed or that Defendant had intended to influence such proceeding. Defendant "conflates pleading with proof." *Ring*, 628 F.Supp.2d at 223 (quoting *United States v. Triumph Capital Group, Inc.*, 260 F.Supp.2d 470, 475 (D. Conn. 2003)). The Government need not allege that a defendant intended to affect or foresaw an official proceeding at the indictment stage; this is a matter for the jury to decide after evidence has been presented at trial. *Ring*, 628 F.Supp.2d at 224 (citing *United States v. Schwarz*, 283 F.3d 76, 108 (2d Cir. 2002); *United States v. Black*, 469 F.Supp.2d 513, 543 (N.D. Ill. 2006)). It is sufficient at this stage of the proceeding that the Government has alleged under §1512(c) that Defendant corruptly attempted to conceal a pair of shoes worn during the attack on L.R. in order to prevent their use in an official proceeding. It is sufficient under §1512(b)(3) that the Government has alleged that Defendant corruptly persuaded those involved in the assault on L.R. with intent to prevent

communication to a law enforcement officer relating to the commission of a federal offense. Whether or not Defendant foresaw a federal investigation or prosecution in the matter is a question for the jury to decide.

Defendant further argues that without alleging what specific official proceeding Defendant's conduct obstructed, there is no "core of criminality" in this case. Defendant points to *United States v. Murphy*, 762 F.2d 1151 (1st Cir. 1985), where the court found that because an official proceeding was not specified in a witness intimidation case, the indictment failed. This case is distinguishable from *Murphy*. In that case there were multiple official proceedings which the defendant's conduct could be found to have disrupted. It was impossible for the defendant to determine from the indictment which conduct was at issue. This is not the case in the current matter. It is readily apparent from the indictment that the official proceeding at issue, while not concretely spelled out, is a federal hate crime prosecution against the persons who assaulted L.R.. The indictment sufficiently alleges that Defendant counseled some of these persons to dispose of shoes that they wore during the attack and persuaded them to withhold parts of the story from police in an attempt to cover up the racial motivation for the crime . The indictment contains twenty-seven overt acts that highlight the specific conduct at issue. These allegations are sufficient to sustain the indictment and put Defendant on notice of the charges against him. Further questions as to the weight of the evidence and Defendant's intent to affect a federal proceeding are properly left to the jury. Therefore, Defendant's motion to dismiss will be denied.

## IV. MOTION TO COMPEL THE GOVERNMENT TO PROVIDE MISCONDUCT EVIDENCE

Federal Rule of Evidence 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

F.R.E. 404(b). Defendant requests that the Government be ordered to provide early notice of such misconduct evidence that it intends to use at trial. The Government contends that any misconduct evidence that it will use at trial can be found in the "voluminous discovery" which it provided to Defendant. The Government maintains that it will provide notice of specifically which misconduct evidence it intends to use in advance of trial in such a manner that will provide time to conduct motions in limine and not delay the trial. Rule 404(b) does not create a specific time line for disclosure of misconduct evidence. *See id.* I find the Government's time line to be reasonable, and will, therefore, deny Defendant's motion.

Defendant also seeks notice of evidence which the Government intends to present under Federal Rule of Evidence 609. Rule 609 requires advance notice of the intent to use evidence of misconduct which is more than ten years old. *See* F.R.E. 609. The Government claims that it knows of no such evidence which it could use against Defendant. Furthermore, because Defendant has not yet disclosed its witness list to the Government, the Government cannot know if it intends to impeach any of Defendant's witnesses with Rule 609 evidence. Therefore, Defendant's motion will be denied.

## V.    MOTION FOR DISCLOSURE PURSUANT TO FEDERAL RULE OF EVIDENCE 807

Defendant seeks disclosure of evidence falling under Federal Rule of Evidence 807 which the Government intends to use at trial.  Rule 807 provides for the admission of residual hearsay evidence, not admissible under rules 803 and 804, but which has sufficient "guarantees of trustworthiness" and passes a specified three prong test for admission. F.R.E. 807.  The Government, however, claims that it does not foresee using such evidence at trial.  Therefore, Defendant's motion will be denied.

## VI.    MOTION FOR RELEASE OF BRADY AND GIGLIO MATERIALS

There is no constitutional right to discovery in a criminal case.  *United States v. Mariani*, 7 F.Supp.2d 556, 561 (M.D. Pa. 1998) (Vanaskie, J.) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).  However, some evidence, courts have reasoned, must be disclosed to protect defendants' due process rights.  For instance evidence which is both exculpatory and material must be disclosed by the government.  *Id.* (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983)). Exculpatory evidence is evidence which "goes to the heart of the defendant's guilt or innocence as well as that which might alter the jury's judgment of the credibility of a crucial prosecution witness."  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  Exculpatory evidence should be found to be material if it raises reasonable doubt as to the defendant's guilt.  *United States v. Agurs*, 427 U.S. 97, 112 (1976).  It is within the discretion of the trial court to order pretrial disclosure of Brady and Giglio material.  *Higgs*, 713 F.2d at 44 n.6.

*Brady* did not create a right to discovery; it placed a duty upon prosecutors to disclose material that is both exculpatory and material.  *United States v. Rodriguez*, Criminal

Action No. 07-709-01, 2008 WL 4925010, *2 - 3 (E.D. Pa. 2008) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Bagley*, 473 U.S. 667, 682 (1985)). When a Defendant merely makes a general *Brady* request, it is in the Government's discretion whether to disclose its information. *Id.* (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)). To obtain even an in camera inspection of evidence, a defendant must allege that the prosecution has withheld *Brady* evidence and "must at least make a 'plausible showing' that the inspection will reveal material evidence." *Id.* (quoting *Ritchie*, 480 U.S. at 59 - 60); *see also United States v. Dent* 149 F.3d 180, 191 (3d Cir. 1998); *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001).

Defendant seeks disclosure of *Brady* material in the Government's possession. Defendant does no more than make general requests for *Brady* information. He does not make a showing that the information he requests is material to the matter at hand. Because of the general nature of Defendant's requests, it is within the discretion of the Government to disclose the information. The Government acknowledges its duty to turn over Brady material and insists that it does not have any such material in its possession. It contends that should such information come into its possession, it will provide Defendant with such material. Because the Government denies the existence of any further Brady information, Defendant's motion will be denied. *See United States v. Goggins*, Criminal No. 07-441, 2009 WL 275557, *1 - 2 (W.D. Pa. 2009) (denying a motion for Brady material where the Government indicated that such material was not in its possession).

Defendant seeks any further evidence affecting the credibility of Government witnesses. While this evidence must be turned over prior to trial, *Giglio v. United States*,

24

405 U.S. 105 (1979), this motion is premature. Impeachment evidence may be disclosed to the defense as late as the day that the witness will testify in court. *United States v. Higgs*, 713 F.2d 39, 44 (1983). The Government claims that it intends to turn this information over to the defense three days prior to trial. This schedule is sufficient, and therefore, Defendant's motion for disclosure of impeachment evidence will be denied.

## VII.   MOTION FOR EARLY DISCLOSURE OF JENCKS MATERIAL

Defendant seeks early production of material under the Jencks Act, 18 U.S.C. §3500. This request runs contrary to established Third Circuit precedent. The Jencks Act requires production of prior witness statements pertaining to the subject matter of their testimony after such witness has testified on direct examination at trial. 18 U.S.C. §3500. The Government has indicated its willingness to provide this material sooner: three days prior to trial. It is not within the power of the District Courts to accelerate this timetable. *United States v. D'Elia*, No. 3:CR-06-191, 2007 WL2458487, *7 (M.D. Pa. 2007) (citing *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978) ("[t]he blunt command of the statute together with the unequivocal legislative history has lead to unbroken precedent in the Courts of Appeals denying to District Courts the power to compel production of the statements of government witnesses until conclusion of their direct examination at the trial.")) Therefore, Defendant's motion for early production of Jencks material will be denied.

## VIII.   MOTION TO INSPECT GRAND JURY MINUTES

Defendant requests various records from the grand jury stage of his criminal proceeding. Courts do not allow inspection of Grand Jury minutes based on conjecture or unsupported accusations; factual support is required to inspect Grand Jury proceedings

which are protected by a "strong presumption of regularity." *United States v. Bunty*, 617 F.Supp.2d 359, 372 (E.D. Pa. 2008) (citing *United States v. Shane*, 584 F.Supp. 364, 367 (E.D. Pa. 1984); *United States v. Nguyen*, 314 F.Supp.2d 612, 615 (E.D. Va. 2004)). In order to warrant even an *in camera* inspection of Grand Jury minutes, a defendant must show "particularized and factually based grounds . . . to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *Id.* (quoting *Nguyen*, 314 F.Supp.2d at 616). Defendant provides numerous reasons as to why a defendant in general would require access to Grand Jury minutes. These reasons, however, would apply to a defendant in any criminal matter. Defendant has failed to show any need that is particularized to his case. Defendant has not provided any facts specific to his case to indicate why inspection of the Grand Jury minutes is necessary here. Therefore, Defendant's motion will be denied.

IX. **MOTION TO PRESERVE AND PRODUCE NOTES, REPORTS, AND EVIDENCE and MOTION TO PRESERVE AND PRODUCE TAPES OF LAW ENFORCEMENT OFFICERS**

Defendant requests preservation and production of all notes, reports, and evidence created by the agencies investigating his case. The Government is aware of and accepts its responsibility to preserve all of this material. To that extent, Defendant's request for preservation will be granted as unopposed. The Government does, however, oppose Defendant's request for production. The Government acknowledges its duty to produce, however, it is opposed to producing the documents at this time. The Government intends to product the documents three days in advance of trial. As discussed above, Jencks Act material is not required or warranted in this case until trial. As the Government intends to

produce such material three days in advance of this mandate, Defendant's motion to produce will be denied.

Defendant also seeks preservation and production of any tape recordings or interviews taken by any law enforcement or investigative agency involved in this case, any state or federal agencies involved in the investigation of this case, and any co-conspirators or co-defendants of Defendant. Once again, the Government recognizes its duty to preserve these materials. These materials will be turned over to Defendant within the time line mandated by *Jencks*. Therefore, Defendant's motion to preserve will be granted and Defendant's motion to produce will be denied.

## X. MOTION FOR NOTICE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)

Under Federal Rule of Criminal Procedure 12(b), a defendant may request notice of the Government's intent to use evidence that the defendant may receive as discovery under Rule 16 so long as that evidence is related to the defendant's motion to suppress. Fed. R. Crim. P. 12(b)(4)(B). The Government contends that it has reviewed its files and turned over all evidence required under Rule 16 and that it will continue to do so should any further evidence arise. Pursuant to Rule 12(b) and in the interest of fostering a speedy and efficient trial and motions process, the Government will be ordered to provide Defendant with notice as to which pieces of this evidence falling under Rule 16 discovery that it intends to use at trial.

## XI. MOTION FOR LEAVE TO FILE ADDITIONAL PRETRIAL MOTIONS

Defendant seeks leave to file additional pretrial motions. Under Federal Rule of Criminal Procedure 12(e), a defendant may receive leave to file additional pretrial motions

beyond the deadline set by the District Court. Fed. R. Crim. P. 12(e). While the Government does not specifically oppose Defendant's motion, in order to receive such leave, Defendant must show good cause. *Id.* The only good cause Defendant has shown is that he has yet to receive portions of discovery and that this discovery may lead to information necessitating further pretrial motions. Therefore, Defendant will be granted leave to file additional pretrial motions, but only to the extent that such motions arise from discovery authorized in this opinion.

### CONCLUSION

For the reasons stated above, Defendant's motions will be granted in part and denied in part.

  July 7, 2010                                     /s/ A. Richard Caputo
Date                                               A. Richard Caputo
                                                  United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | NO. 3:09-CR-397 |
| v. | |
| | (JUDGE CAPUTO) |
| WILLIAM MOYER, | |
| Defendant. | |

## <u>ORDER</u>

**NOW**, this __7th__ day of July, 2010, **IT IS HEREBY ORDERED** that:

1.  Defendant's motion to dismiss (Doc. 99) is **DENIED**.

2.  Defendant's motion to dismiss (Doc. 97) is **DENIED**.

3.  Defendant's motion to dismiss (Doc. 101 is **DENIED**.

4.  Defendant's motion to compel (Doc. 91) is **DENIED**.

5.  Defendant's motion for disclosure (Doc. 89) is **DENIED**.

6.  Defendant's motion for *Brady* and *Giglio* material (Doc. 94) is **DENIED**.

7.  Defendant's motion for early disclosure of *Jencks* material (Doc. 90) is **DENIED**.

8.  Defendant's motion to inspect Grand Jury minutes (Doc. 86) is **DENIED**.

9.  Defendant's motion to preserve and produce notes, reports and evidence (Doc. 87) and motion to preserve and produce tapes (Doc. 92) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    (a)  Defendant's motions to preserve are **GRANTED** as unopposed.

    (b)  Defendant's motions to produce are **DENIED**.

10.  Defendant's motion for notice (Doc. 95) is **GRANTED**.

11. Defendant's motion to file additional pretrial motions (Doc. 88) is **GRANTED** to the extent that such further motions arise from discovery arising from this opinion.  Leave to file additional pretrial motions is **DENIED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge